**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| LONNIE ORR, and BILL PORTER, individually and on behalf of all others similarly situated, | CASE NO. |
| Plaintiffs, | **COMPLAINT - CLASS ACTION FOR DAMAGES PURSUANT TO 47 U.S.C. § 227, *et seq.* (TELEPHONE CONSUMER PROTECTION ACT)** |
| v. | |
| NATIONAL RIFLE ASSOCIATION OF AMERICA, a New York corporation, and INFOCISION, INC. d/b/a InfoCision Management Corporation, a Delaware corporation, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiffs Lonnie Orr ("Orr") and Bill Porter ("Porter")(collectively the "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants National Rifle Association of America ("NRA") and InfoCision, Inc. d/b/a InfoCision Management Corporation ("InfoCision") (collectively "Defendants") to: (1) stop their practice of placing telemarketing calls using an "automatic telephone dialing system" ("ATDS") and/or using "an artificial or prerecorded voice" to the to the cellular and landline telephones of consumers nationwide without their prior express consent, (2) enjoin Defendants from continuing to place such calls to consumers, and (3) to obtain redress for all persons who have suffered legal injury as a result of such conduct. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## I.     NATURE OF THE ACTION

1.      Defendant NRA is an organization focused on firearms education, training, and advocacy.

2.     Defendant InfoCision is the nation's second-largest privately held teleservices company. InfoCision provides inbound and outbound call center solutions, direct mail and fulfillment services, and other direct marketing solutions to Fortune 100 companies and nonprofit organizations.

3.     Unfortunately for consumers, Defendants' aggressive attempts to sell NRA memberships involves an unlawful telemarketing campaign through which they jointly make, (or InfoCision makes on the NRA's behalf with the NRA's knowledge), autodialed and/or pre-recorded voice calls to consumers without first obtaining the consumers' prior express consent to be called using such technology.

4.     By making the telephone calls at issue in this Complaint, Defendants caused Plaintiffs and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls and the nuisance of having to answer such unsolicited calls. Furthermore, the calls interfered with Plaintiffs' and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendants also caused injury to their phones by causing wear and tear on phones, consuming battery life, and appropriating cellular minutes and data. Defendants' calling practices also invaded the privacy of such consumers.

5.     In response to Defendants' unlawful conduct, Plaintiffs bring this action for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

6.     Plaintiffs file the instant lawsuit and seek an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers as complained of herein together

with an award of statutory damages to be paid into a common fund for the benefit of the members of the Classes under the TCPA, together with costs and reasonable attorneys' fees.

## II.     JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over Plaintiffs' TCPA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' TCPA claims arises under the laws of the United States, specifically 47 U.S.C. § 227 *et seq.* and its implementing regulations, 47 C.F.R. § 64.1200 *et seq.*

8.     This Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants systematically and continuously conduct business in Virginia, are registered to do business in Virginia, and a substantial part of the events giving rise to the claims asserted occurred in or emanated from this District. Venue is additionally proper in this District because Defendant NRA is a resident of this District.

## III.     PARTIES

9.     Plaintiff Lonnie Orr ("Orr") is a natural person and citizen of the State of Kansas.

10.     Plaintiff Bill Porter ("Porter") is a natural person and citizen of the State of Texas.

11.     Defendant NRA is a corporation incorporated and existing under the laws of the State of New York with its headquarters located at 11250 Waples Mill Road, Fairfax, Virginia 22030. Defendant NRA is registered to conduct business with the Virginia State Corporation Commission under ID #F0538456. NRA may be may be served through its registered agent, Corporation Service Company, Bank of America Center, 16th Floor, 1111 East Main Street, Richmond, Virginia 23219. Defendant NRA, both directly and through various subsidiaries and affiliates, conducts business throughout this District, the Commonwealth of Virginia, and the United States.

12.     Defendant InfoCision is corporation incorporated and existing under the laws of

the State of Delaware with its headquarters located at 325 Springside Drive, Akron, Ohio 44333.

Defendant InfoCision is registered to conduct business with the Virginia State Corporation

Commission under ID #F1114315. InfoCision may be served through its registered agent, CT

Corporation System, 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060. Defendant

InfoCision conducts business throughout this District, the Commonwealth of Virginia, and the

United States.

### IV.    THE TELEPHONE CONSUMER PROTECTION ACT OF 1991 (TCPA), 47 U.S.C. § 227, *et seq.*

13.    In 1991, Congress enacted the TCPA in response to a growing number of

consumer complaints regarding certain annoying and harassing telemarketing practices.

14.    The TCPA regulates, among other things, the use of automated telephone

equipment, or "autodialers." Specifically, the plain language of 47 U.S.C. § 227(b)(1)(A)(iii)

prohibits the use of autodialers to make any call to a wireless number in the absence of an

emergency or the prior express consent of the called party.

15.    According to findings by the Federal Communications Commission ("FCC"), the

agency Congress vested with the authority to issue regulations implementing the TCPA, such

calls are prohibited because, as Congress found, automated or pre-recorded telephone calls are a

greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly

and inconvenient. The FCC also recognized that many wireless customers are charged for

incoming calls whether they pay in advance or after the minutes are used (though it is not a

requirement of the TCPA that any called person be charged for incoming calls).

### V.    FACTUAL ALLEGATIONS

#### A.    General Factual Allegations

16.    Defendant NRA is an organization focused on firearms education, training, and

advocacy.

17.     The NRA has a sister organization, The NRA Foundation, which is a 501(c)(3) charitable organization, organized and existing under the laws of the District of Columbia.[1] The unsolicited telemarketing calls complained of herein were made on behalf of the NRA, not The NRA Foundation. Indeed, in the most recent Commercial Fundraiser Activity Report released by the Charities Program of the Washington Secretary of State, only the NRA appears as working with a commercial fundraiser, Defendant InfoCision.[2]

18.     Unfortunately for consumers, Defendant NRA, on its own and/or through its agents such as Defendant InfoCision, has turned to a tried and true, albeit unlawful, method of recruiting new members: unsolicited telemarketing.

19.     Defendants, specifically InfoCision on the NRA's behalf and for its benefit, place unsolicited autodialed and/or pre-recorded telemarketing calls to consumers without their express written or oral consent.

20.     To make matters worse, Defendants call these consumers on their cellular telephones using an ATDS or place pre-recorded voice calls to their landline or wireless telephones without their prior express consent in violation of the TCPA.

21.     Defendant InfoCision acting on behalf of Defendant NRA and as Defendant NRA's agent, places thousands of outbound telemarketing calls each day to consumers nationwide. These calls are made for the express purpose of soliciting the call recipients to purchase NRA memberships and other products.

22.     On information and belief, at all times relevant Defendant NRA had knowledge of InfoCision's telemarketing calls made on NRA's behalf and the NRA had the ability to control

---

[1] *See* https://www.nrafoundation.org/
[2] *See* https://www.sos.wa.gov/_assets/charities/FundraiserReport.pdf

InfoCision's telemarketing actions implemented on NRA's behalf. NRA also knowingly received the benefits of InfoCision's calls made on its behalf.

23.     As specifically noted on the membership application portion of the NRA's website:[3]

CITY *          STATE *          ZIP CODE *

DATE OF BIRTH *(MM/DD/YYYY)*

☐ I'm joining today but keep my free gift.          * Required

④ Method of Payment:

VISA   MasterCard   DISCOVER   AMEX          PayPal

**ACTIVATE YOUR MEMBERSHIP!**

Contributions, gifts or membership dues made or paid to the National Rifle Association of America are not refundable or transferable and are not deductible as charitable contributions for Federal income tax purposes. $3.75 of the membership dues are designated for magazine subscription. Foreign members will be subject to additional postage charges. There will be an annual fee of $5 per year for Canada and $10 per year for all other countries.

NRA Home • Privacy Policy • State by State Disclosures • Contact Us
2016 National Rifle Association™ • 11250 Waples Mill Road, Fairfax, VA 22030

VERIFIED & SECURED   Trustwave Trusted Commerce

24.     Thus, the NRA has explicitly acknowledged that they receive funds from the public in three distinct manners – dues paying memberships, non-tax deductible contributions, and outright gifts.

25.     In addition, the NRA explicitly designates a portion of the membership dues for a magazine subscription.

26.     The unsolicited telemarketing calls complained of herein were made to solicit memberships in the NRA, including all of the products and services attendant to such memberships. Indeed, an NRA membership can be considered a good or service.

27.     NRA memberships come with benefits and discounts outlined on the membership

---

[3] *See* https://joinnra.nra.org/join/join.aspx

application portion of the NRA's website:[4]



28.     These "member benefits"[5] are further described on the NRA's website:

- A "choice of subscription to American Rifleman, American Hunter, or America's 1st Freedom" magazines;

- "$5,000 of Accidental Death and Dismemberment coverage;"

- "$2,500 of ArmsCare coverage with your NRA membership. This plan covers insured firearms, air guns, bows and arrows against theft, accidental loss, and damage;" and

- "An official NRA Membership ID card."

29.     NRA memberships thus constitute "goods or services" within the meaning of 47 U.S.C. § 227(a)(4) and thus the calls pitching these memberships constitute "telemarketing" under the TCPA. 47 C.F.R. § 64.1200(f)(12).

30.     Moreover, as explicitly noted by the NRA, "membership dues made or paid to the

---

[4] *See* https://joinnra.nra.org/join/join.aspx
[5] *See* https://www.nramemberservices.org/members/benefits/benefits.aspx

National Rifle Association of America…are not deductible as charitable contributions for Federal income tax purposes."[6]

31.   Not surprisingly, consumers have repeatedly spoken out against Defendants' pervasive and widespread telemarketing practices:

- Received calls daily from IMC 512-640-8253. When called back answers National Rifle Association. No way to get off their list.[7]

- Calling daily for months from several numbers. Calls blocked but still harassing.[8]

- Says IMC....calling every day, several times a day, 4 rings, no message.[9]

- Calls several times and caller id =IMC, I called back and got a message that it was the National Rifle Association and they welcome my call back and they would be calling me again.[10]

---

[6] *See* https://joinnra.nra.org/join/join.aspx
[7] http://800notes.com/Phone.aspx/1-512-640-8253
[8] *Id.*
[9] *Id.*
[10] *Id.*

- The caller ID says "IMC"......I don't pick-up the phone, and they don't leave a message. They've called too many times to count now.[11]

- It is from a company that the NRA hires to call people to solicit donations which they keep a chunk of and give a percentage to the NRA, I found this out when I called their (The NRA) main headquarters and talk to one of the people in the membership office, he asked me what the number was and when I gave it to him he confirmed that they hire this company's and others that specialize in calling members and non members, After he told me this last year I told him in no uncertain terms that when we joined the NRA nothing was ever said about them giving our names and phone numbers to every moocher in the United States so we would be harassed around the clock for money and to get our vote.[12]

- Someone called me from this number. My number is on the do not call list.[13]

- I have been receiving numerous phone calls also, but I am not a NRA member, but have gotten newsletters from them because of subscribing to Conservative newsletters etc. When we answer the phone we get no answer. This is really getting annoying. Either it's a mistake or it's harassment.[14]

32.     At no time did Defendants obtain prior express consent from the Plaintiffs and the Classes orally or in writing to receive autodialed and/or pre-recorded calls on their cellular telephones. Further, to the extent *any* consent was provided it was revoked if ever given. Also, at no time did either Defendant obtain prior express consent that contained a disclosure informing Plaintiffs or any other consumer that agreeing to receive autodialed and/or pre-recorded calls was not a condition of the purchase of any property or service.

33.     In making the phone calls at issue in this Complaint, Defendants and/or their agents utilized an ATDS. Specifically, the hardware and software used by Defendants (or their agents) has the capacity to store, produce, and dial random or sequential numbers, and/or receive

---

[11] *Id.*
[12] http://800notes.com/Phone.aspx/1-888-202-2385/3
[13] http://800notes.com/Phone.aspx/1-877-210-3463/4
[14] http://www.complaintsboard.com/complaints/national-rifle-association-nra-c10314.html

and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendants' automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention). A former employee of InfoCision has admitted to "making on an auto-dialer outbound calls on behalf of the N.R.A."[15]

34.     Since the consent standards differ depending on what type of phone a telemarketer or company is calling, there are numerous third party services that will scrub the call lists for a company to segment out landline and cellular telephone numbers.[16] Indeed, one service notes that it can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[17]

35.     Businesses and their telemarketers can also avoid TCPA violations by subscribing to commercially available services that insure that the number being called is up to date and associated with the correct contact. For example, companies such as Neustar Experian, Early Warning, Idiology, and Infutor advertise their ability to: (1) identify the current phone type: landline or wireless before they call, (2) verify in real-time the current owner of a phone number to avoid calling a recycled phone number, (3) update and append accurate address and phone information, and (4) identify active phone numbers.

36.     Despite industry guidelines, commercially available resources, and the obvious lack of consent, Defendants fail to take the necessary steps to insure that their autodialed and/or pre-recorded calls are placed only to consenting recipients.

---

[15] https://www.linkedin.com/in/peter-williams-6b297879
[16] *See e.g.* http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[17] https://www.neustar.biz/services/tcpa-compliance

37.     Defendants knowingly made (and continue to make) autodialed and/or pre-recorded calls without the prior express consent of the call recipients and knowingly continue to call them after requests to stop. As such, Defendants not only invaded the personal privacy of Plaintiffs and members of the putative Class, they also intentionally and repeatedly violated the TCPA.

        B.      **Plaintiff Orr's Experience with Defendants**

38.     Plaintiff Orr registered his cellular telephone number with the National Do Not Call Registry on December 15, 2004 and his landline telephone number on November 19, 2010 for the express purpose of avoiding unwanted telemarketing calls.

39.     Plaintiff Orr received a 1-year gift membership to the NRA that lasted from January 2014 to December 2014. He did not renew his membership.

40.     Beginning in approximately June 2015, Plaintiff Orr began to receive multiple calls on his cellular telephone placed by Defendant InfoCision on behalf of Defendant NRA using various phone numbers starting with his area code 620.

41.     The calls to Plaintiff Orr were explicitly made to solicit him to purchase or renew his lapsed NRA membership.

42.     Starting from the first call he received on his cellular telephone, Plaintiff Orr informed Defendants that he was not interested in paying for a membership and to stop calling.

43.     Despite his requests for them to stop calling, Plaintiff Orr continued to receive multiple calls from Defendants on his cellular telephone for an entire year, at least through June 2016. Defendants were specifically calling to solicit Plaintiff Orr to purchase an NRA membership. Plaintiff Orr asked Defendants repeatedly over the year of calls to stop calling him.

44.     Despite his requests for Defendants to stop calling him, Plaintiff Orr received

ongoing calls placed by Defendant InfoCision on behalf of Defendant NRA soliciting him to purchase an NRA membership for an entire year, at least through June 2016.

45.     By making unauthorized autodialed calls as alleged herein, Defendants have caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited autodialed phone calls to their cellular telephone despite never having consented to the receipt of such calls.

46.     Though Plaintiff Orr had a relationship with Defendant NRA, he never provided express authorization for Defendants to place autodialed calls to him on his cellular telephone. Indeed, Plaintiff Orr has not provided his cellular telephone number to Defendants, nor has he associated his cellular telephone number with his NRA membership.

47.     At all times relevant Defendants are and were aware that the above-described telephone calls were and are being made to consumers like Plaintiff Orr who had not consented to receive them.

48.     To redress these concrete and particularized harms, Plaintiff Orr, on behalf of himself and a class of similarly situated individuals, bring suit under the TCPA which prohibits unsolicited calls of the nature described in this Complaint to both cellular telephones and landline telephones.

49.     On behalf of the Class, Plaintiff Orr seeks an injunction requiring Defendants to cease all unsolicited calling activities and an award of statutory damages to be paid into a common fund for the benefit of the Class Members, together with costs and reasonable attorneys' fees.

   **C.     Plaintiff Porter's Experience with Defendant**

50.     Plaintiff Porter registered his cellular telephone number with the National Do Not

Call Registry on August 3, 2004 for the express purpose of avoiding unwanted telemarketing calls.

51.     Beginning in approximately September 2016, Plaintiff Porter began to receive calls on his cellular telephone placed by Defendant InfoCision on behalf of Defendant NRA using various phone numbers including: 979-314-7252, 979-415-3026 and 979-232-4006. Plaintiff Porter estimates that he received five calls in total, of which none were answered. Here are screenshots displaying three of the known calls:

                     

979-415-3026 – 2 calls                      979-314-7252

52.     On September 20, 2016 Plaintiff Porter answered a call from 979-314-7252. When he answered, there was a notable silence on the other end of the line for a moment, a hallmark sign that Defendants were and are using an ATDS.

53.     The agent identified himself as calling on behalf of Defendant NRA and asked Plaintiff Porter if he could play a short pre-recorded message. Plaintiff agreed and heard a message discussing President Obama, Mayor Bloomberg and support for the NRA. The agent came back on the line and tried to solicit the purchase of a 5-year membership to the NRA that

was on sale for $140. Plaintiff Porter said that he wasn't interested, and the call ended.

54.     Plaintiff Porter has never consented to receive autodialed calls on his cellular telephone from Defendants. In fact, Plaintiff Porter has never been a member and never provided any financial support to this organization. Plaintiff Porter is unsure how Defendants even got his contact information in the first place.

55.     By making unauthorized autodialed calls as alleged herein, Defendants have caused consumers actual harm. In the present case, a consumer could be subjected to many unsolicited autodialed phone calls to their cellular telephone and pre-recorded voice calls on their landline despite never having consented to the receipt of such calls.

56.     Plaintiff Porter has never had a business relationship with Defendant NRA and never provided express authorization for Defendants to place pre-recorded calls to him on his cellular telephone.

57.     Defendants are and were aware that the above-described telephone calls were and are being made to consumers like Plaintiff Porter who had not consented to receive them.

58.     To redress these concrete and particularized harms, Plaintiff Porter, on behalf of himself and a class of similarly situated individuals, bring suit under the TCPA which prohibits unsolicited calls of the nature described in this Complaint to cellular telephones.

59.     On behalf of the Class, Plaintiff Porter seeks an injunction requiring Defendants to cease all unsolicited calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees.

## VI.     CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated ("Class Members").

61.    <u>Class Definitions</u>. Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring

this action as a class action on behalf of two Classes of persons defined as follows:

**Autodialed Class:** All persons in the United States who from a date four years
prior to the filing of the initial complaint in this case through the present: (1)
Defendants (or a third person acting on behalf of Defendants) called; (2) on the
person's cellular telephone number; (3) using the same equipment that was used
to call Plaintiffs Orr and Porter; and (4) for whom Defendants claim they obtained
prior express consent in the same manner as Defendants claim they obtained prior
express consent to call Plaintiffs Orr and Porter.

**Stop Calling Class:** All persons in the United States who from a date four years
prior to the filing of the initial complaint in this case through the present: (1)
Defendants (or a third person acting on behalf of Defendants) called; (2) on the
person's cellular telephone number; (3) using the same equipment that was used
to call Plaintiff Orr, (4) after the person requested to no longer be called in the
manner that Plaintiff Orr requested.

62.    The following people are excluded from the Classes: (1) any Judge or Magistrate

presiding over this action and members of their families; (2) Defendants, Defendants'

subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their

parents have a controlling interest and its current or former employees, officers and directors; (3)

persons who properly execute and file a timely request for exclusion from the Class; (4) persons

whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5)

Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and

assigns of any such excluded persons. Plaintiffs anticipate the need to amend the definitions of

the Classes following class discovery, including discovery revealing the manner by which

Defendants claim they obtained prior express consent to place autodialed and/or pre-recorded

calls to the Plaintiffs.

63.    **Numerosity**: The exact number of members within the Classes is unknown and

not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On

information and belief, Defendants have placed unsolicited calls to hundreds or thousands of

consumers who fall into the definition of the Classes. Members of the Classes can be identified through Defendants' records.

64. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes in that Plaintiffs and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct, namely their unauthorized telemarketing calls. Plaintiffs are members of the Classes defined herein, and if Plaintiffs are able to recover for the claims set forth in this Complaint then the other Class Members will have a right to recover as well.

65. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in complex class actions, including class actions under the TCPA and related statutes. Plaintiffs have no conflicts with or interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs.

66. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendants' conduct constitutes a violation of the TCPA;

    (b)    Whether Defendants utilized an automatic telephone dialing system to place calls to members of the Class;

    (c)    Whether members of the Class are entitled to statutory and treble damages based on the willfulness of Defendants' conduct;

    (d)    Whether Defendants obtained prior express consent to contact any class members;

    (e)       Whether Defendants placed calls to members of the Class who had expressly asked Defendants to stop calling;

    (f)        Whether Defendants' calls constitute telemarketing or were dual purpose messages, and

    (g)       To the extent Defendants' conduct does not constitute telemarketing, whether Defendants obtained prior express oral consent to contact any class members.

67.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. Joinder of all parties is impracticable, and the damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et seq.*)**
**(On Behalf of Plaintiffs Orr and Porter and the Autodialed Class)**

68.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth

herein.

69.     Defendants and/or their agent(s) placed unsolicited autodialed calls to cellular telephone numbers belonging to Plaintiffs Orr and Porter and the other members of the Autodialed Class using equipment that, upon information and belief, had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*, without human intervention. The telephone dialing equipment utilized by Defendants and/or their agent(s), which is substantially similar to a predictive dialer, dialed numbers from a list, or dialed numbers form a database of telephone numbers, in an automatic and systematic manner.

70.     These calls were made *en masse* and without the prior express written or oral consent of the Plaintiffs Orr and Porter and the other members of the Autodialed Class to receive such calls.

71.     To the extent prior written express consent was required, Defendants failed to obtain prior written express consent that disclosed to the consumer that agreeing to receive autodialed and/or pre-recorded calls was not a condition of purchase or use of any goods or service or that the consumer was agreeing to receive calls with the use of an ATDS or similar technology. No oral consent was provided either.

72.     To the extent Defendants' agent(s) placed the calls at issue, Defendants' agent acted with actual or apparent authority and/or in accordance with a contract between Defendants and their agent(s). Defendants' agents acted under Defendants' control and for Defendants' benefit and/or with Defendants' knowledge and approval. Defendants controlled their agents and knew about, and received the benefits of, the agent's calling activities. Defendants ratified the agent's conduct with respect to the placing of such calls.

73.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiffs Orr and Porter and the other members of the Autodialed Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

74.     In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs Orr and Porter and the other members of the Autodialed Class.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227, *et seq.*)**
**(On Behalf of Plaintiff Orr and the Stop Calling Class)**

75.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

76.     When Plaintiff Orr was called by the NRA or its agent(s) he asked to no longer be called.

77.     The NRA and/or its agents ignored such requests and continued to place autodialed calls to Orr.

78.     Under the TCPA, consumers must be allowed to revoke their consent through reasonable means anytime.

79.     By failing to honor Orr's stop calling requests, the NRA and/or its agents violated the TCPA.

80.     Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff Orr and the other members of the Stop Calling Class are each entitled to, under 47 U.S.C. § 227(b)(3)(B), a minimum of $500.00 in damages for each violation of such act.

81.     In the event that the Court determines that Defendants' conduct was willful and knowing, it may, under 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiffs Orr and Porter and the other members of the Stop Calling Class.

## VII.   DEMAND FOR A JURY TRIAL

Plaintiffs demand a jury trial.

## VIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Lonnie Orr and Bill Porter, on behalf of themselves and the Classes, pray for the following relief:

1.     An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiffs Orr and Porter as the representatives of the Classes and appointing their attorneys' as Class Counsel;

2.     An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater all to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

3.     An order declaring that Defendants' actions, as set out above, violate the TCPA;

4.     A declaratory judgment that Defendants' telephone calling equipment constitutes an automatic telephone dialing system under the TCPA;

5.     An order requiring Defendants to disgorge any ill-gotten funds acquired as a result of its unlawful telephone calling practices;

6.     An order requiring Defendants to identify any third-party involved in the autodialed and/or prerecorded calling as set out above, as well as the terms of any contract or compensation arrangement it has with such third parties;

7.      An injunction requiring Defendants to cease all unsolicited autodialed and/or prerecorded calling activities, and otherwise protecting the interests of the Class;

8.      An injunction prohibiting Defendants from using, or contracting the use of, an automatic telephone dialing system without obtaining, and maintaining records of, call recipient's prior express written consent to receive calls made with such equipment;

9.      An injunction prohibiting Defendants from contracting with any third-party for marketing purposes until it establishes and implements policies and procedures for ensuring the third-party's compliance with the TCPA;

10.     An injunction requiring Defendants to cease all unsolicited calling activities, to honor requests from consumers to no longer be called, and otherwise protecting the interests of the Class;

11.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above;

12.     An award to an appropriate cy pres recipient of all monies remaining in the common fund due to uncashed checks; and

13.     Such other and further relief that the Court deems reasonable and just.

Dated: February 6, 2017

**LONNIE ORR and BILL PORTER**, individually, and on behalf of all others similarly situated,

By: _____/s/_____
Matthew B. Kaplan

Matthew B. Kaplan (VSB# 51027)
The Kaplan Law Firm PLLC
509 N Jefferson St
Arlington, VA 22205
Telephone: (703) 665-9529
Facsimile: (888) 958-1366

Steven L. Woodrow
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman
(Law@stefancoleman.com)*
Adam T. Savett
(adam@stefancoleman.com)*
Law Offices of Stefan Coleman, P.A.
201 S Biscayne Blvd., 28th Floor
Miami, FL 33131
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

*Counsel for Plaintiffs and the Putative Class*

*pro hac vice* admission to be filed